| | |
|---|---|
| KHAIRI WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>CITY OF CHARLOTTE; )<br>OFFICER MATTHEW RATCHFORD, )<br>in his individual and official capacity; )<br>OFFICER TAWAN SKEEN, )<br>in his individual and official capacity; )<br>SGT. JOSE TORRES, in his individual )<br>And official capacity; OFFICER RYAN )<br>WOOD, in his individual and official )<br>Capacity; and OFFICER LAUREN )<br>FEDEROWICZ,in her individual and official)<br>Capacity, ERIK TORRES in his individual )<br>And official capacity. )<br>Defendants. )<br>_____ ) | AMENDED COMPLAINT<br>(Jury Trial Demanded) |

NOW COMES Plaintiff KHAIRI WILLIAMS, by and through his undersigned counsel, Darlene Harris and complains of the Defendants as follows:

**INTRODUCTION**

1. On or about December 10, 2021, between 4:00 pm and 5:00 pm, Khairi Williams was attacked by officers of the Charlotte-Mecklenburg Police Department ("CMPD") after he called them for help.

2. Williams was at the home of Ms. Smith, his children's mother, when she threatened him with a firearm. Williams called CMPD for help.

1

3. CMPD arrived on the scene, and instead of taking the time to properly assess the situation, CMPD saw a Black man in distress and arrested him, slammed Williams onto the hood of a vehicle and then to the ground.

4. Defendant Ratchford, echoing Derek Chauvin's murder of George Floyd, held Williams on the ground with his full weight on Williams and his knees pressed into Williams' neck and back.

5. Williams cried out to the best of his ability, "I can't breathe!". The CMPD officers did not release the pressure on Williams' chest or his body, instead holding him down with the weight of five officers and the knees still pressed into his back.

6. Even when his fellow officer, believed to be officer, Erik Torres, attempted to de-escalate Officer Ratchford and pleaded with him to remove his knee, saying "come on man" Officer Ratchford ignored his fellow officer and continued his use of excessive force on Plaintiff. The body worn camera video catches Defendant Ratchford say "quit this I can't breathe bullshit." Erik Torres then also continued to place pressure on Mr. Williams back with his knee.

7. In full view of his small children, Williams loses consciousness.

8. Finally, only after Williams' body goes limp, Defendant Ratchford moves his knees.

9. Even then, Officer Ratchford shows no signs of empathy or remorse for his actions.

10. Both of Plaintiff's children watched, screaming and crying, as this horrific scene unfolded. His toddler daughter looks desperately at one of the officers and cries out "You hurt my daddy."

11. Defendant Ratchford had no reason to arrest Williams, much less pin him to the ground.

12. There is no justification for holding Williams with a knee to his back until he lost consciousness, a blatant use of excessive force which could have killed him. Despite knowing how dangerous the situation was, none of the other officers stopped their excessive use of force or stopped Ratchfords use of force. Instead, they joined forces to keep Plaintiff pinned down.

13. Williams was not a threat, did not have a weapon, and did not try to escape.

14. Williams called 911 for help and was met with unsanctioned violence. Instead of providing assistance, Defendant Ratchford and the other officers saw a Black man in distress, announced he was under arrest, and forced him to the ground with a knee in his back until he lost consciousness.

15. Williams brings this Complaint for violations of his rights guaranteed by the U.S. Constitution and the statutory and common law of this State. Thankfully, this knee to the chest did not result in a loss of life, but the behavior of Defendant Ratchford, the other officers on the scene – Defendants Skeen, Erik Torres, Sgt. Jose Torres, Wood, and Federowicz – and the City of Charlotte must be held to account.

## **PARTIES AND JURISDICTION**

16. Plaintiff is a citizen and resident of Mecklenburg County, Charlotte, North Carolina.

17. Defendant City of Charlotte ("City") is a municipal corporation organized under the laws of the State of North Carolina, and capable under state statute of bringing and defending lawsuits, including claims involving its police department. The City is responsible for governing and overseeing the policies and actions of CMPD. The City of Charlotte bears legal responsibility for the intentional torts and negligent acts of CMPD officers in the course of their employment. The City is responsible for the

3

appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

18. The City is also liable under the doctrine of *respondeat superior* for the acts and omissions of its employees who were acting within the scope of their employment. On information and belief, the City has purchased insurance, either by contract with an insurance company or by participation in an insurance risk pool, that covers the claims raised in this action and has thereby waived any defense of sovereign or governmental immunity.

19. Additionally, Defendant City of Charlotte, at the time of the incidents giving rise to this action, waived governmental or sovereign immunity by operation of Section 2-3 of its Code of Ordinances.

20. By ordinance adopted by its elected Council and pursuant to N.C.G.S. § 160A-485.5, the City has waived its governmental immunity from the negligence of CMPD police officers pursuant to the State Tort Claims Act, which applies to the claims of Plaintiff.

21. Upon information and belief, Officer Matthew Ratchford is a citizen and resident of the State of North Carolina who, at all times relevant herein, was employed by City as an officer with CMPD, acting in both his individual and official capacity and within the course and scope of his employment and under the color of state law.

22. Upon information and belief, Officer Skeen is a citizen and resident of the State of North Carolina who, at all times relevant herein, was employed by City as an officer with CMPD, acting in both his individual and official capacities and within the course and scope of his employment and under the color of state law.

23. Upon information and belief, Sgt. Jose Torres is a citizen and resident of the State of

North Carolina who, at all times relevant herein, was employed by the City as an officer with CMPD, acting in both his individual and official capacity and within the course and scope of his employment and under the color of state law.

24. Upon information and belief, Sgt. Erik Torres is a citizen and resident of the State of North Carolina who, at all times relevant herein, was employed by the City as an officer with CMPD, acting in both his individual and official capacity and within the course and scope of his employment and under the color of state law.

25. Upon information and belief, Officer Ryan Wood is a citizen and resident of the State of North Carolina who, at all times relevant herein, was employed by City as an officer with CMPD, acting in his individual and official capacity and within the course and scope of his employment. At all times officer Ryan Wood acted under the color of state law.

26. Upon information and belief, Officer Lauren Federowicz is a citizen and resident of the State of North Carolina who, at all times relevant herein, was employed by City as an officer with CMPD, acting in her individual and official capacity and within the course and scope of her employment and under the color of state law.

27. All acts described in this Complaint occurred in Mecklenburg County, North Carolina.

28. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §§ 1983, 28 U.S.C. § 1343(a)(3), 42 U.S.C. § 1988 and the Fourth Amendment.

29. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over all state law claims because each state law claim arose out of the same set of facts and is so related to the federal law claims that it forms part of the same case or controversy.

30. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Western District of North

Carolina, the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

31. Venue is also proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b)(1), as, upon information and belief, all defendants reside within the Western District of North Carolina.

## FACTS

32. On December 10, 2021, Plaintiff was visiting his children at the home of Ms. Smith, their mother, in an apartment complex within the City of Charlotte, North Carolina and within the jurisdiction of CMPD.

33. While inside the residence, Smith took Plaintiff's wallet and keys, physically attacked him, and pointed a handgun at him. This attack occurred in the presence of Plaintiff's minor children.

34. Plaintiff called 911 for help and to report the domestic violence that he had just experienced.

35. As Plaintiff told the 911 dispatcher about the events of the attack, he explained that he was leaving the apartment as part of his continued attempts to stop the matter from escalating further.

36. Plaintiff also informed the 911 dispatcher that he was worried that his son may have been injured, because Smith had dropped him during her attack against Plaintiff.

37. Shortly thereafter, paramedics arrived, retrieved Plaintiff's son from the apartment, and placed the child in an ambulance for observation.

38. Plaintiff requested to see his son in the ambulance, and the paramedics refused.

39. Moments later, at approximately 15:56 (Exhibit A), three CMPD officers arrived on

the scene. Upon information and belief, the first officers to arrive on the scene were Defendants Ratchford, Skeen, and Erik Torres and Sgt. Jose Torres.

40. While standing outside the apartment, Plaintiff calmly met the responding officers and told them what happened inside Smith's apartment. Plaintiff also showed the officers a video on his phone showing Smith repeatedly attacking him and pointing a gun at him.

41. Additional CMPD officers arrived on the scene including Defendants Wood and Federowicz.

42. Plaintiff again requested to see his son in the ambulance, asking to "check to see if my son is ok."

43. CMPD Defendant officers harshly refused Plaintiff's request and began to treat him like a criminal. Plaintiff reminded the officers that he had been attacked and had a gun pulled on him. He pleaded "I'm the one who called y'all!"

44. Two CMPD Defendant officers went inside the apartment to speak with Smith, while Plaintiff stayed in the driveway and spoke to a third officer. Minutes later, the third officer told Plaintiff that he could leave the scene.

45. Because the third Defendant officer told Plaintiff he could leave the scene, Plaintiff began to slowly walk away.

46. As Plaintiff is walking in the direction away from Smith's residence, at approximately 16:16 (Ex. A), an officer called out—without prompting, warning, or any change in behavior by Plaintiff—that Plaintiff was under arrest.

47. Plaintiff heard the officer state that he was under arrest and immediately stopped and turned toward the officer with his arms raised out to his sides as a sign of compliance

and asked "For what?".

48. As he was the person who had called 911 for help, Plaintiff was confused and stated loudly that he did nothing wrong. At the same time, the officer who had told him he could leave now charged toward him and slammed him onto the hood of white vehicle.

49. Multiple CMPD officers including Defendants Ratchford, Skeen, Erik Torres, Sgt. Torres, Federowicz and Wood join in and violently push and throw Plaintiff against the hood of the vehicle then with Plaintiff's arms pulled behind his back, throw him face first onto the pavement at 16:17 (Ex. A).

50. Smith and Plaintiff's daughter can be seen in the body worn camera footage watching this attack happen and Smith is crying for CMPD officers to stop.

51. The CMPD officers, including Defendants Ratchford, Skeen, Sgt. Jose Torres, Erik Torres, Wood, and Federowicz, pinned Plaintiff onto the pavement of the apartment complex parking lot, pulling his arms together behind his back and shoving his chest and face into the pavement. Plaintiff protested that he did not do anything, but he made no physical movements to resist officers or attempt to harm them.

52. As Defendants were placing handcuffs on Plaintiff and with Defendants having full control of the Plaintiffs arms and body, Plaintiff's voice becomes higher, and he cries out that he can't breathe as Defendants have their knees shoved into Plaintiffs neck, back and body. Plaintiff in no way behaved in a manner to require this level of force.

53. Defendant Ratchford placed his knee on Plaintiff's upper back area and leaned in towards Plaintiff's neck.

54. Defendants Ratchford, Skeen, Sgt. Torres, Erik Torres, Wood, and Federowicz each

8

participated in pinning Plaintiff and holding him on the ground with knees on his neck, upper back, placing undue force on his chest and neck. In addition to the knee on his back/neck, Defendants, Primarily Defendant Ratchford, used their body weight to apply even more force on Plaintiff's body, preventing Plaintiff from moving and getting an adequate air supply.

55. Upon information and belief, one officer, believed to be Erik Torres, attempted to have Defendant Ratchford remove his knee from Plaintiff's back/neck, but Defendant Ratchford refused and ordered the officer Defendants to continue to place undue pressure and force on Defendant while Plaintiff lay on the concrete not resisting officers.

56. At 16:18:12 (Ex A.), Plaintiff can be heard gasping, "I can't breathe. I can't breathe."

57. The video captures Defendant Ratchford admit and shout "I'm on his f*cking shoulders, put the handcuffs on!"(Exhibit B 16:18:13)

58. Defendant Ratchford continued kneeling against Plaintiff's neck and back, yelling "stop with that 'I can't breathe' bullsh*t."

59. At 16:18:41 (Ex.B), Plaintiff loses consciousness.

60. Only after Plaintiff lost consciousness did the Defendants finally remove their body weight from Plaintiff and turn him over.

61. Despite Plaintiff's loss of consciousness, Defendants continued to taunt him with shouts to "give up the act" and that "all of this was his own doing."

62. While Plaintiff lay unconscious, Smith can be heard screaming, "What did y'all just do?"

63. Plaintiff's children witnessed their father lose consciousness under the weight of the Defendants and at one point his daughter attempted to run toward her father crying out

for him.

64. Plaintiff's daughter can be heard crying hysterically. She approaches her father lying on the ground and looks at one of the Defendants, crying "You hurt my daddy!"

65. Defendants Ratchford, Skeen, Sgt. Torres, Erik Torres, Wood, and Federowicz struggled to turn Plaintiff's limp body so as to free his airway and assist him to regain consciousness.

66. Once Plaintiff finally regained consciousness, Defendant Ratchford tells Plaintiff he was not free to leave in a domestic violence situation, in an effort to justify the unlawful arrest and justify his brutality in using his knee to hold down Plaintiff and cut off his breathing.

67. Plaintiff was taken into custody on charges for Assault on a Female and Resisting Public Officer.

68. Plaintiff was in custody for forty-eight hours before he was released.

69. All charges against Plaintiff were subsequently dismissed less than a year later and prior to Plaintiff's first appearance in court.

**FIRST CLAIM FOR RELIEF
FOURTH AMENDMENT
UNLAWFUL ARREST - 42 U.S.C. § 1983**
(Defendants Ratchford, Skeen, Erik Torres, Sgt. Torres, Wood and
Federowicz in their individual capacities)

70. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

71. The Fourth Amendment of the United States Constitution establishes the right of the people to be secure in their persons, houses, papers, and effects, against all unreasonable searches and seizures and includes the right to be free from unlawful arrest.

10

Case 3:24-cv-00771-FDW-DCK    Document 3    Filed 08/26/24    Page 10 of 20

72. On or about December 10, 2021, Defendants Ratchford, Skeen, Sgt. Torres, Erik Torres, Wood, and Federowicz, each in their individual capacities and acting under color of law, violated Plaintiff's Fourth Amendment rights by unlawfully arresting the Plaintiff and placing the Plaintiff under and unreasonable seizure.

73. Defendants did not possess a warrant for the arrest of Plaintiff.

74. Defendants did not witness the commission of any crime by Plaintiff before placing him under arrest.

75. Defendants did not have probable cause to arrest Plaintiff.

76. Defendants violated Plaintiff's constitutional rights under the Fourth Amendment by placing him under arrest without lawful authority or probable cause.

77. Defendants did not act as an objectively reasonable officer and are not entitled to qualified immunity.

78. As a result of the willful conduct by Defendants and/or their deliberate indifference and reckless disregard for Plaintiff's constitutional rights, Plaintiff suffered damages including but not limited to loss of liberty, loss of security in his person, physical restraint, psychological and emotional trauma, lost wages, loss of earning capacity, costs and attorney fees.

79. Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendants pursuant to 42 U.S.C. §§ 1983 and 1988.

**SECOND CLAIM FOR RELIEF**
**FOURTH AMENDMENT**
**EXCESSIVE FORCE- 42 U.S.C. § 1983**
(Defendants Ratchford, Skeen, Sgt. Jose Torres, ErikTorres, Wood and Federowicz in their individual capacities)

11

80. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

81. The Fourth Amendment of the United States Constitution establishes the right of the people to be secure in their persons, houses, papers, and effects, against all unreasonable searches and seizures and includes the right to be free from unreasonable uses of force.

82. The force that was used against Plaintiff was, on its face, unlawful as the arrest was unlawful and without probable cause. Even if probable cause did exist, the use of force was excessive.

83. Plaintiff did not present a risk of imminent harm to himself, to any Defendant, or to any bystander.

84. Plaintiff did not possess a weapon.

85. Plaintiff did not threaten anyone or make any furtive movement.

86. On December 10, 2021, Defendants Ratchford, Skeen, Erik Torres, Sgt. Torres, Wood, and Federowicz, each in their individual capacities and acting under color of law, violated Plaintiff's Fourth Amendment rights and used excessive force when they violently grabbed Plaintiff, throwing him onto a car and to the ground, placing a knee onto Plaintiff's upper back/neck, using the pressure of their body weights to force Plaintiff's chest into the pavement inhibiting his ability to breathe, and holding Plaintiff with undue pressure and force face down on concrete until Plaintiff lost consciousness and stating "quit this I can't breathe bullshit" when Plaintiff insisted he could not breathe just before he lost consciousness.

87. Plaintiffs' right to be free from excessive force under the Fourth Amendment to the United States Constitution, is applicable to the states under the Fourteenth Amendment.

88. The actions complained of were taken under color of state law and are thus actionable pursuant to 42 U.S.C. § 1983.

89. Defendants' use of force on Plaintiff was unlawful, objectively unreasonable, and wholly unjustified.

90. Defendants did not act as objectively reasonable officers and are not entitled to qualified immunity.

91. As a direct and proximate result and cause of the willful conduct by Defendants and/or their deliberate indifference and reckless disregard for Plaintiffs constitutional rights, Plaintiff suffered damages including but not limited to loss of liberty, loss of security in his person, pain and suffering, medical costs, lost wages, loss of earning capacity, psychological and emotional trauma, costs and attorney fees.

92. Plaintiff demands and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury, as well as costs and attorney fees from Defendants pursuant to 42 U.S.C. §§ 1983 and 1988.

93. Defendants violated Plaintiff's Fourth Amendment rights without lawful authority, and in deliberate, willful or wanton disregard for those rights. Plaintiff seeks and is entitled to punitive damages against each Defendant individually.

## THIRD CLAIM

### Assault and Battery
(Defendants Ratchford, Skeen, Erik Torres, Sgt.Torres, Wood and Federowicz in their individual capacities)

94. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

95. The actions of Defendants Ratchford, Skeen, Erik Torres, Sgt. Torres, Wood, and Federowicz, in their individual capacities constituted assault and battery under the

13

common law of North Carolina.

96. Defendants acted with negligence and/or malice and recklessness, in a willfully negligent, and criminally negligent manner and therefore are not protected by public official immunity.

97. Defendants' actions were unreasonable under the circumstances, excessive and inappropriate to the situation at hand, exceeded their statutory authority, and made with suck reckless indifference and disregard to the health, safety, and rights of Plaintiff that they intended or constructively intended to harm him.

98. Defendants intentionally seized Plaintiff without consent, lawful authority, or probable cause, forcibly grabbed him and threw him onto a car hood and then the pavement, physically restrained Plaintiff in such a way that he could not breathe, and used their body weight to exert pressure and pain upon Plaintiff and stating "quit the 'I can't breathe' bullshit" when Plaintiff insisted he could not breathe just before he lost consciousness.

99. As a direct and proximate result of Defendants' conduct, Plaintiff was in reasonable fear of bodily harm and in fact endured the forcible contact of Defendants on his person causing him serious bodily injury, physical injury including the loss of consciousness, physical pain and suffering, restriction of movement, loss of liberty, and all other damages alleged herein.

100. Plaintiff seeks and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury.

101. Plaintiff seeks and is entitled to punitive damages from Defendants in their individual capacities as they acted with malice and deliberate, willful, and wanton disregard of Plaintiff's rights and privileges under both state and federal law.

**FOURTH CLAIM**

**False Arrest /Imprisonment**
(Defendants Ratchford, Skeen, Erik Torres, Sgt. Torres, Wood and
Federowicz in their individual capacities)

102. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

103. Defendants Ratchford, Skeen, Sgt. Torres, Erik Torres, Wood, and Federowicz, in their individual capacities, arrested and restrained Plaintiff on December 10, 2021 without lawful authority or probable cause.

104. Defendants acted with negligence and/or malice and recklessness, in a willfully negligent, and criminally negligent manner and therefore are not protected by public official immunity.

105. Defendants' actions were unreasonable under the circumstances, excessive and inappropriate to the situation at hand, exceeded their statutory authority, and made with reckless indifference and disregard to the health, safety, and rights of Plaintiff that they intended or constructively intended to harm him.

106. As a direct and proximate result of Defendants' actions, Plaintiff suffered a loss of liberty, humiliation, indignity, and mental suffering in addition to the other damages alleged herein.

107. Plaintiff seeks and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury.

108. Plaintiff seeks and is entitled to punitive damages from Defendants in their individual capacities as they acted with malice and deliberate, willful, and wanton disregard of Plaintiff's rights and privileges under both state and federal law.

**FIFTH CLAIM**
**Malicious Prosecution**
(Defendants Ratchford, Skeen, Sgt. Torres, Erik Torres, Wood and
Federowicz in their individual capacities)

109. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

110. Defendants Ratchford, Skeen, Torres, Wood, and Federowicz, each in their individual capacities despite knowing that probable cause did not exist to arrest Plaintiff, acted to bring criminal charges against Plaintiff.

111. Defendants acted with negligence and/or malice and recklessness disregard for Plaintiff's rights, in a willfully negligent, and criminally negligent manner to prosecute criminal charges against Plaintiff without evidence to support the same.

112. All criminal charges against Plaintiff were dismissed, ending the criminal proceeding in his favor, prior to his first appearance in Court.

113. As a direct and proximate result of Defendants' actions, Plaintiff was subjected to arrest, processing, and detainment, causing Plaintiff to suffer a loss of liberty, humiliation, indignity, and mental suffering in addition to the other damages alleged herein.

114. Plaintiff seeks and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury.

115. Plaintiff seeks and is entitled to punitive damages from Defendants in their individual capacities as they acted with malice and deliberate, willful, and wanton disregard of Plaintiff's rights and privileges under both state and federal law.

### SIXTH CLAIM
**Negligence**
(Defendants Ratchford, Skeen, Sgt. Torres, Erik Torres, Wood and Federowicz in their individual and official capacities and Defendant City)

116. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

117. Defendants Ratchford, Skeen, Erik Torres, Sgt. Torres, Wood, and Federowicz, in their individual capacities and/or in their official capacities as agents of Defendant City, despite knowing the probable cause did not exist to arrest Plaintiff, acted to bring criminal charges against Plaintiff.

118. Defendant City is vicariously liable for the acts and omissions of its employees who were acting with the scope of their employment.

119. Defendant City has waived any defense of sovereign or governmental immunity as codified in N.C.G.S. §160A-485.5 and/or its own adopted resolution Section 2-3 of its Code of Ordinances.

120. The Defendant City of Charlotte, pursuant to N.C.G.S. § 160A-485.5, has adopted an ordinance waiving its governmental immunity from claims of negligence by its employees to the same extent that sovereign immunity is waived under the State Tort Claims Act for claims of negligence against state employees. If Defendants were a state employee, their negligence would be actionable under the State Tort Claims Act. Thus, their negligence is actionable here.

121. Defendants owed a duty of due care to Plaintiff as a citizen who called for assistance, a person interacting with law enforcement, and to act with reasonableness when using force.

122. The conduct of Defendants was deliberate, grossly negligent, in bad faith, intentional, corrupt, malicious, wanton, willful, done with conscious or reckless disregard for the rights and safety of Plaintiff, and exceeded the scope of their lawful authority including but not limited to the following particulars:

   a. Telling Plaintiff he could leave the scene then arresting him when he tried to do so;
   b. Arresting Plaintiff without probable cause;
   c. Using force when no force was warranted;

17

d. Using excessive force under the circumstances;
   e. Using unreasonable force and deadly force;
   f. Throwing the Plaintiff onto the hood of a car;
   g. Forcing Plaintiff face-first onto the pavement;
   h. Physically restraining the Plaintiff with the body weight of multiple officers;
   i. Using a knee on the upper back of Plaintiff to restrain him;
   j. Obstructing Plaintiff's airway;
   k. Applying pressure to Plaintiff's body so that he could not breathe;
   l. Holding Plaintiff in a position where he could not breathe until he lost consciousness;
   m. Refusing to move the knee on Plaintiff's back despite notice that it was interfering with his ability to breathe;
   n. Stating "quit the 'I can't breathe' bullsh*t" when Plaintiff insisted he could not breathe just before he lost consciousness.
   o. Failing to intervene in the unreasonable and excessive use of force;
   p. Failing to act as reasonably prudent officers under similar circumstances; and
   q. In such other particulars as the evidence may show.

123. As a direct and proximate result of Defendants' actions, Plaintiff was subjected to physical injury, pain and suffering, the loss of consciousness, arrest, confinement, loss of liberty, humiliation, indignity, and mental suffering in addition to the other damages alleged herein.

124. Plaintiff seeks and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury.

125. Plaintiff seeks and is entitled to punitive damages from Defendants in their individual capacities as they acted with malice and deliberate, willful, and wanton disregard of Plaintiff's rights and privileges under both state and federal law.

## SEVENTH CLAIM
### Negligence
(Defendant City)

126. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

127. Defendant City owed a duty of care to Plaintiff to properly train and supervise law enforcement officers employed by the City.

128. Defendant City has waived any defense of sovereign or governmental immunity as codified in N.C.G.S. §160A-485.5 and/or its own adopted resolution Section 2-3 of its Code of Ordinances.

129. Defendant City was grossly negligent in the following particulars:

    a. Failing to train officers in proper uses of force and restraint techniques;
    b. Failing to supervise officers to ensure that proper techniques are used;
    c. Permitting officers to use their knees on the backs of citizens to restrain them;
    d. Failing to train officers to intervene when another uses excessive force;
    e. Failing to appropriately train and supervise their employees;
    f. Failing to adopt and/or enforce appropriate policies, procedures, patterns, practices, or customs for the use of force by law enforcement officers;
    g. Escalating a law enforcement encounter through their own actions;
    h. Failing to act as a reasonably prudent law enforcement agency under similar circumstance; and
    i. In such other particulars as the evidence may show.

130. As a direct and proximate result of Defendants' actions, Plaintiff was subjected to physical injury, pain and suffering, the loss of consciousness, arrest, confinement, loss of liberty, humiliation, indignity, and mental suffering in addition to the other damages alleged herein.

131. Plaintiff seeks and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury.

**PRAYER FOR RELIEF**

Wherefore, upon a trial of this matter, Plaintiff prays that the Court grant him the following relief:

1. Actual and compensatory damages to be determined at trial;

2. Punitive damages in an amount, to the extent they are recoverable and in an amount to be determined at trial, that will deter such conduct by Defendants in the future;

3. Pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988 and 42 U.S.C. §1920;

4. Any and all other relief to which he may be entitled.

Respectfully submitted,

*/s/ Darlene Harris*
Darlene Harris
N.C. State Bar No. 46087
Power In Protection
1026 Jay Street B184
Charlotte, NC 28205
Telephone: (704) 313-8816
Email:Darlene@powerinprotection.com

*Counsel for Plaintiff*

20